# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

NAKEYDA N. HAYMER,

    Plaintiff,

v.

RACINE FAMILY YMCA,

    Defendant.

CIVIL ACTION NO. 20CV1846

Jury Trial Demanded

## COMPLAINT

NOW COMES the Plaintiff, Nakeyda N. Haymer, by and through her attorneys, McDonald & Kloth, LLC, and as and for her cause of action against the Defendant, Racine Family YMCA, alleges and shows to the court as follows:

### NATURE OF THE ACTION

This action arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, to correct unlawful employment practices on the basis of sex and opposition to discrimination, and to provide appropriate relief to the Plaintiff who was adversely affected by such practices.

### JURISDICTION AND VENUE

1. Jurisdiction of this Court is proper pursuant to 28 USC §1331. This action is authorized and instituted pursuant to Title VII, 42 USC §2000e-2 et seq.

2. Venue is proper in this Court pursuant to 28 USC §1391(b) and (c). The employment practices alleged to be unlawful were and are being committed within the jurisdiction of the United States District Court for the Eastern District of Wisconsin, and the employment records relevant to such practices are maintained and administered in the Eastern District of Wisconsin.

## PARTIES

3. The Plaintiff, Nakeyda N. Haymer ("Haymer"), is an adult resident of the State of Wisconsin with a residence located in Racine, Wisconsin.

4. The Defendant, Racine Family YMCA, is a non-profit organization offering services to the public at three separate facilities within the City of Racine, Wisconsin.

## STATEMENT OF CLAIMS

5. The YMCA hired Haymer in the position of "Credible Messenger" within the Credible Messenger Program at the Racine Family YMCA on or about January 31, 2019.

6. The YMCA describes the Credible Messenger Program and the role of the Credible Messenger as follows:

> With financial and program support through Racine County Human Services, this new intervention/gang diversion program connects low income juvenile offenders (middle and high school students) identified by the Racine courts as high risk for repeat offenses, to teachers/mentors (Credible Messengers) who have had and overcome similarly challenging life experiences. Through gang-aversion mentoring and instruction to broaden personal and educational horizons, students will learn to seek positive life outcomes, reducing recidivism. Family Engagement Specialists will meet weekly with parents to identify and address family needs and concerns. Credible Messenger goals:
>
> - Demonstrated understanding of how personal actions affect self and others
> - Improved sense of self-worth
> - Improved sense of hope/aspiration

See *https://ymcaracine.org/strong-communities-agenda*.

7. Haymer originally applied for the Credible Messenger position in December, 2018 and was offered the position on December 13, 2018.

8. On December 18, 2018, Haymer learned that the offer had been rescinded by Ahmad Qwai ("Qwai"), Chief Operations Officer and Vice President of the Racine YMCA. Qwai currently holds the position of President and Chief Executive Officer of the Racine YMCA.

9. Instead, Qwai required Haymer to submit to an interview before a panel of Credible Messengers prior to making her an offer of employment.

10. The Credible Messengers employed by the YMCA at that time all were male: Justin Lambert, Derrick Seay, and Tyrell Davis.

11. On information and belief, Qwai did not require the male Credible Messengers to interview with anyone else prior to Qwai appointing them to the position of Credible Messenger.

12. Haymer interviewed with the three male Credible Messengers and was offered the position of Credible Messenger on January 17, 2019.

13. The YMCA explained that Haymer would be scheduled to work approximately 25 hours per week and be paid $15.00 per hour for her work as a Credible Messenger.

14. At the conclusion of her employment with the YMCA, Haymer learned that she was being paid an hourly wage of $14.00 as a Credible Messenger instead of the promised $15.00 per hour.

15. On or about March 18, 2019, Haymer learned that one male Credible Messenger was paid $17.00 per hour while the other two male Credible Messengers were being paid $15.00 per hour.

16. The YMCA did not provide Haymer with check stubs showing her rate of pay. The first check stub the YMCA provided to Haymer was on her termination date, March 20, 2019.

17. During Haymer's employment with the YMCA, Qwai made comments and engaged in conduct that degraded Haymer as a female employee.

18. During Haymer's employment with the YMCA, the YMCA also tasked Haymer to perform other duties including, but not limited to, Family Engagement Specialist under the Credible Messenger Program and Nurturing Fathers Program.

19. One of Haymer's first recollections of being discriminated against based upon her gender involved a Credible Messenger trip to Maryland. Qwai and the male Credible Messengers were scheduled to attend a Credible Messenger program event. Haymer expressed her interest in attending the program was told that Qwai would need to be consulted because it was a "men only" trip. Haymer was not allowed to attend the trip to Maryland.

20. Haymer later saw pictures taken at the Washington DC trip showing other female Credible Messengers involved with the program.

21. Haymer also came to learn that Qwai had taken two male potential candidates for the Credible Messenger position on the Washington D.C. trip, yet he refused to allow Haymer to attend despite her being hired for the job.

22. One of Haymer's first recollections of being singled out by Qwai occurred very shortly after her hire when Qwai, during a group meeting, confirmed that he had "hand-picked" the male Credible Messengers but not Haymer, the only female Credible Messenger.

23. Qwai often ostracized Haymer from meetings and communications that were important to her position and development as a Credible Messenger while fully engaging Haymer's male counterparts.

24. Qwai often singled-out Haymer regarding her work ethic, experience, and effectiveness notwithstanding her work ethic, experience, and effectiveness being on par with her male counterparts.

25. Qwai belittled Haymer in front of other YMCA employees including, but not limited to, Haymer's male counterparts. Haymer never observed Qwai belittle a male Credible Messenger in her presence.

26. Qwai criticized a professional reference letter written on behalf of Haymer in a group setting. Haymer never observed Qwai engage in similar conduct with any male employee.

27. Haymer complained to her coworkers regarding Qwai's inappropriate and degrading comments and expressed that she believed Qwai was biased against her because of her gender.

28. On March 15, 2019, Haymer met with Qwai wherein Qwai informed Haymer that she did not hold the position of Credible Messenger. Instead, Qwai contended, Haymer was hired as a Family Engagement Specialist and was to assist with the Nurturing Fathers program.

29. Qwai further stated that no one at the YMCA was employed as a Credible Messenger and that the title is for the program - not the position.

30. Qwai's statement to Haymer was patently false based upon the YMCA's own program and employment documentation.

31. Qwai stated to Haymer that Haymer could work as a Credible Messenger only when female clients were enrolled in the program. Qwai stated that Haymer could not work with male clients in the program.

32. Haymer objected to Qwai's directive prohibiting her from working with male clients in the program and told Qwai that the program does not prohibit female Credible Messengers from working with male clients or vice versa.

33. Haymer asked Qwai to identify the source of his policy prohibiting female Credible Messengers from working with male clients. Qwai responded, "Me. As the leader of this team, that's how I say it's going to go. As a woman you will not work in the program hands on with youth unless there is a female youth client. I highly doubt there will be many female youths so you will be family engagement only."

34. Haymer continued to object to Qwai's policy prohibiting her from working with male clients.

35. Qwai responded, "Your opinion and how you think things should go doesn't override my leadership. You were hired for your expertise and experience with women. If you don't like or agree with how I said things are going to go, you have the right to leave the position."

36. Qwai repeatedly stated that "females do not work with males" throughout the March 15, 2019 meeting.

37. On March 18, 2019, Haymer attended a staff meeting wherein Qwai and other staff were present to discuss questions about the Credible Messenger program. During the meeting, Haymer inquired as to the prohibition against female Credible Messengers being allowed to work with male clients.

38. The YMCA terminated Haymer's employment on March 20, 2019.

39. The YMCA violated Title VII by maintaining a company policy that discriminates on the basis of gender.

40. The YMCA violated Title VII by discriminating against Haymer in the terms and conditions of her employment based upon her gender.

41. The YMCA violated Title VII by discriminating against Haymer based upon her gender with respect to her compensation.

42. The YMCA violated Title VII by discriminating against Haymer by terminating her employment because of her gender.

43. The YMCA violated Title VII by terminating Haymer's employment because she opposed discrimination in the workplace.

44. The effect of the practices complained of in the foregoing paragraphs has been to deprive Haymer of equal employment opportunities and otherwise adversely affect her status as an employee because of her gender and opposition to discrimination in the workplace.

45. The unlawful employment practices complained of in the foregoing paragraphs were done with reckless indifference to Haymer's federally protected rights.

46. All conditions precedent for filing this lawsuit have been fulfilled. A Right to Sue Letter was issued by the Equal Employment Opportunity Commission on October 15, 2020.

## **PRAYER FOR RELIEF**

A. Grant a permanent injunction against Defendant and its officers, assigns and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of gender and opposition to discrimination.

B. Order Defendant to institute and carry out policies, practices and programs which provide equal employment opportunities for all genders and persons who oppose discrimination and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Haymer whole by reinstating her to the position she held with Defendant, commensurate will all seniority, benefits, compensation, and raises.

D. Order Defendant to make Haymer whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in the foregoing paragraphs in amounts to be determined at trial.

E. Order Defendant to make Haymer whole by providing compensation for past and future nonpecuniary losses, including, but not limited to, medical and physical health issues, emotional pain, suffering, inconvenience and mental anguish resulting from the unlawful practices complained of in the foregoing paragraphs in amounts to be determined at trial.

F. Order Defendant to make Haymer whole by awarding punitive damages for Defendant's intentional violation of the law.

G. Order Defendant to compensate Haymer for the attorneys' fees and costs she's incurred as a result of bringing this action.

H. Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMANDED

The Plaintiff, Nakeyda Haymer, requests a jury trial on all questions of fact raised by this Complaint.

Dated on this 14th day of December, 2020.

                                          **MCDONALD & KLOTH, LLC**
                                          Attorneys for Plaintiff

                         By:     s/Shannon D. McDonald
                                   Shannon D. McDonald
                                   WI State Bar No. 1036954
                                   MCDONALD & KLOTH, LLC
                                   N96 W18221 County Line Rd.
                                   Suite 200
                                   Menomonee Falls, WI 53051
                                   Direct: (262) 252-9123
                                   Office: (262) 252-9122
                                   Fax:    (414) 395-8773
                                   sdm@themklaw.com