UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NAKEYDA HAYMER,

    Plaintiff,

v.                                                    Case No. 20-CV-1846

RACINE FAMILY YMCA,

    Defendant.

## DECISION AND ORDER

### 1. Facts and Procedural History

Racine County contracted with Racine Family YMCA to create and run Racine's Credible Messenger Program. (ECF Nos. 29, ¶ 1[1]; 31, ¶¶ 1, 9.) The Credible Messenger

---

[1] The plaintiff correctly notes that, inconsistent with Civil Local Rule 56(b)(1)(C)(i), the YMCA's proposed findings of fact often include multiple factual assertions in a single numbered paragraph. (ECF No. 29 at 1.) This has needlessly complicated the plaintiff's task in responding and the court's review of the proposed findings of fact. But compound facts are most problematic when they are used as a means to circumvent the court's limit of 150 proposed findings of fact. *See Pollock v. ManpowerGroup US, Inc.*, No. 18-CV-107, 2019 U.S. Dist. LEXIS 199665, at *9 (E.D. Wis. Nov. 18, 2019). Because it does not appear that the YMCA's proposed findings of fact would exceed 150 if they had been properly presented, the court declines to take any action with respect to this violation of the Local Rules. The defendant also failed to comply with Civil Local Rule 56(b)(6). "Assertions of fact in the parties' supporting memoranda must refer to the corresponding numbered paragraph of the statement of facts, statement of additional facts, or statement of stipulated facts." Civ. L.R. 56(b)(6). This procedure is required to permit the court to easily assess whether the factual assertion is disputed. *See Joyce v. Milwaukee Cylinder*, No. 18-CV-1790, 2020 U.S. Dist. LEXIS 172349, at *16 n.1 (E.D. Wis. Sep. 21, 2020). Consequently, the unsupported factual assertions in the YMCA's briefs are disregarded. The court instead relies on the YMCA's proposed findings of fact.

Program is a mentoring program to assist children involved in the justice system to change the attitudes and behaviors that led to their criminal activity. (ECF Nos. 29, ¶ 1; 31, ¶ 2.)

At all times relevant to this dispute, Ahmad Qawi was the Chief Operating Officer for the YMCA (ECF No. 31, ¶ 7) and the person responsible for the administration of the Credible Messenger Program (ECF No. 31, ¶ 10). He hired men he knew from the YMCA for the program. His first hire was Damian Dolley to supervise the program. (ECF No. 31, ¶¶ 11-14.) Qawi also hired Derrick Seay and Tyrell Davis as Credible Messengers and paid them $17 per hour. (ECF No. 31, ¶¶ 15-19, 26.) Qawi also hired Justin Lambert as a Credible Messenger, who was paid "more than $15 per hour." (ECF No. 31, ¶¶ 16, 26, 81.) Qawi knew all of these men for several years before hiring them as Credible Messengers. (ECF No. 31, ¶¶ 17, 20, 23.)

Dolley learned that Nakeyda Haymer was interested in the program and after meeting with her offered her the position of Credible Messenger. (ECF No. 31, ¶ 29, 31-34.) Dolley subsequently told Haymer that Qawi required that she interview for the position first. (ECF No. 31, ¶ 38.) This turned out to be a group interview where Haymer and three other male candidates were interviewed collectively by Dolley, Seay, Lambert, and Davis. (ECF No. 31, ¶¶ 40-41.) During the interview the candidates were told that the person chosen for the position would attend training in Maryland on January 24, 2019.

2
Case 2:20-cv-01846-WED   Filed 06/22/22   Page 2 of 18   Document 38

(ECF No. 31, ¶ 42.) Haymer was chosen unanimously. (ECF No. 31, ¶ 43.) She was paid $14 per hour. (ECF No. 31, ¶ 96.)

When Haymer inquired about the Maryland trip, she says Dolley told her he had to check with Qawi because he was not sure if it was a "men-only" trip. (ECF No. 31, ¶ 48.) Dolley later told her to not worry about the trip because "[i]t's just the men." (ECF No. 31, ¶ 49.) Haymer was not permitted to go on the Maryland trip, but two of the men who interviewed at the same time she did and who she beat out for the position went on the trip because, although they were not hired, they still wanted to volunteer for the Credible Messenger Program. (ECF No. 31, ¶¶ 51, 54.)

Haymer began working part-time for the YMCA on January 31, 2019. (ECF No. 29, ¶ 2.) She worked as a Credible Messenger in the mornings. (ECF No. 31, ¶ 60.) When she expressed that she wanted more hours, the YMCA gave her a second part-time position, with its Focus on Fathers Program that she could do in the afternoons. (ECF No. 29, ¶ 7.) In her role with Focus on Fathers she was given discretion to create her own position and job title and to run her own women's group. (ECF No. 29, ¶ 8; 22-3 at 18, 68:23-69:3.)

Because the Credible Messenger Program was just being developed, no children were yet involved, and the members of the Credible Messenger Program generally spent their mornings in group meetings, brainstorming and planning how they wanted to operate the program. (ECF No. 31, ¶¶ 95, 99.) After Haymer returned from Washington, D.C., where the YMCA sent her to learn about its Credible Messenger Program (ECF No.

29, ¶ 15), she allegedly expressed strong views that the Racine program should operate more like the D.C. program. (ECF No. 29, ¶ 11.) According to the YMCA, this led to her refusing to listen to Dolley and responding angrily when he did not adopt her ideas. (ECF No. 29, ¶ 11.) Dolley found Haymer's behavior "cancerous," and he reminded her that he was the supervisor. (ECF No. 26-2 at 15-18.)

According to Qawi and Dolley, during a meeting with the Credible Messenger Program team Haymer called the YMCA's Director, Quincy Harrison, a liar. (ECF Nos. 29, ¶ 12; 22-3 at 22, 85:10-13; 22-2 at 20-21, 77:25-78:4.) Shortly after this incident, on March 15, 2019, Haymer met with Qawi to discuss the different roles she felt she was performing at the YMCA. (ECF No. 31, ¶ 67.) She told Qawi that she had three positions—Credible Messenger, Family Engagement Specialist, and Focus on Fathers. (ECF No. 31, ¶ 68.) Qawi allegedly responded that she was not a "Credible Messenger" but was only working within the program. (ECF No. 31, ¶ 71.)

According to Haymer, Qawi told her she could work as a Credible Messenger only if there were girls in the program and she would work only with girls. (ECF No. 31, ¶¶ 72, 74.) Haymer told him that he was wrong and that she could work as a Credible Messenger with boys. (ECF No. 31, ¶ 75.) Qawi reportedly responded, "I'm the boss, and that's how it's going to be," and she could resign if she did not like it. (ECF No. 31, ¶¶ 73, 76.) Haymer told Qawi that she did not believe what he was doing was legal because she was

being treated differently because she was a woman. (ECF No. 31, ¶ 77.) Dolley later told Haymer that a woman could work with boys as a Credible Messenger. (ECF No. 31, ¶ 78.)

Five days later, Qawi fired Haymer. (ECF No. 31, ¶ 100.) He did not review her personnel file before firing her. (ECF No. 31, ¶ 103.) Nor did he follow the YMCA's progressive discipline policy in firing her. (ECF No. 31, ¶ 104.)

Haymer filed this action on December 14, 2020, alleging that the YMCA violated Title VII by "maintaining a company policy that discriminates on the basis of gender," "discriminating against Haymer in the terms and conditions of her employment based upon her gender," "discriminating against Haymer based upon her gender with respect to her compensation," "discriminating against Haymer by terminating her employment because of her gender," and "terminating Haymer's employment because she opposed discrimination in the workplace." (ECF No. 1, ¶¶ 39-43.)

Both sides have moved for summary judgment. (ECF Nos. 19, 23.) Those motions are now ready for resolution. The court has jurisdiction under 28 U.S.C. § 1331. In accordance with 28 U.S.C. § 636(c), all parties have consented to the full jurisdiction of a magistrate judge. (ECF Nos. 2, 5.)

2. **Applicable Law**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of

the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from the evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001)). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016).

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1). "[T]he well-known and oft-used *McDonnell Douglas* framework for evaluating discrimination remains an efficient way to organize, present, and assess evidence in discrimination cases." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018) (citing *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017)). Under this burden-shifting framework "the plaintiff bears the burden of establishing a *prima facie* case of unlawful pay discrimination." *Kellogg v. Ball State Univ.*, 984 F.3d 525, 528 (7th Cir. 2021) (citing *Lauderdale v. Ill. Dep't of Human Servs.*, 876 F.3d 904, 910 (7th Cir. 2017)). Plaintiffs establish

a *prima facie* case by showing they "(1) are members of a protected class; (2) performed reasonably on the job in accord with their employer['s] legitimate expectations; (3) were subjected to an adverse employment action despite their reasonable performance; and (4) similarly situated employees outside of the protected class were treated more favorably by the employer." *Johnson*, 892 F.3d at 895 (citing *David*, 846 F.3d at 225). "If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to provide 'a legitimate nondiscriminatory reason for its action.'" *Kellogg*, 984 F.3d at 528 (quoting *Lauderdale*, 876 F.3d at 910). If it does so, the burden then shifts back to the plaintiff to present evidence that the employer's explanation is merely a pretext for discrimination. *Id.* The court at the summary judgment stage then assesses whether the employer honestly believed the nondiscriminatory reasons it provided. *Id.*

However, this burden shifting framework is just one way a plaintiff may proceed and frame the evidence. At the end of the day the "singular question that matters in a discrimination case [is] 'whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'" *Johnson*, 892 F.3d at 894 (brackets omitted) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). The plaintiff need not prove that the adverse employment action would not have occurred but for her protected status. Rather, she need prove only that her protected status was a

"motivating factor" for the adverse employment action. *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 174 (2009) (citing 42 U.S.C. § 2000e-2(m)).

### 3. Analysis

Haymer's discrimination claim has seven facets: (1) she was required to interview for the position whereas her male colleagues were not; (2) she was not allowed to go on the trip to Maryland; (3) she alone was required to work as a Family Engagement Specialist, in the Focus on the Fathers Program, and in the Credible Messenger Program; (4) she was paid less than her male colleagues; (5) she was told she was not allowed to mentor boys; (6) she was terminated because of her gender; and (7) she was terminated in retaliation for complaining about discrimination.

**3.1. The YMCA's Motion for Summary Judgment**

The court first addresses the YMCA's motion for summary judgment and thus considers the evidence in the light most favorable to Haymer.

According to Haymer, Qawi did not want a woman working as a Credible Messenger. Instead, he wanted his male friends in the positions. When Dolley said he had hired a woman as a Credible Messenger, Qawi intervened and required her to interview along with three men, apparently with the hope that one of the men would be chosen. But this strategy proved unsuccessful in thwarting Haymer's hiring because the panel that interviewed the group (which did not include Qawi) unanimously chose Haymer.

Once she was hired, Qawi sought to undermine her success by preventing her from going on a training trip to Maryland and instead allowing only men, including two men she beat out for the job, to go. Unlike the male Credible Messengers, who worked only parttime, Qawi required Haymer to do additional work at the YMCA and work fulltime. He also barred her from mentoring boys. When she challenged him, he asserted his authority to set the rules. When she suggested that what he was doing was illegal, he fired her.

Certain aspects of Haymer's claim are easily addressed. There was nothing adverse or discriminatory about the fact that she was required to interview for the position. Setting aside the YMCA's explanation that the other Credible Messengers were not required to interview because they were already known to the YMCA, it is undisputed that three male applicants (who were apparently, like Haymer, not known to Qawi) were required to interview along with Haymer. Most significantly, she was hired over the men who were interviewed at the same time she was. Because she was hired, she suffered no adverse consequence as a result of having to interview. Thus, the requirement that she interview for the job was not discriminatory.

As for the trip to Maryland, Haymer has presented evidence that she was excluded because of her gender. Although the YMCA insists that she was excluded because the trip had already been planned and paid for before she was hired (ECF No. 29, ¶ 14), for purposes of the YMCA's motion for summary judgment the court must accept Haymer's

testimony that Dolley told her, "Don't worry about it. It's just the men" (ECF No. 31, ¶ 49,) reflecting a decision that she was excluded because she is a woman. But her exclusion was not discriminatory under Title VII because her exclusion did not materially affect the terms, conditions, or privileges of her employment. Haymer was soon permitted to attend a similar training program in Washington, D.C. that none of her peers who went to Maryland was allowed to attend. (ECF No. 29, ¶ 15.)

Similarly, there was nothing discriminatory about the fact that Haymer did work in addition to the Credible Messenger Program. Her additional work was not an adverse action but a benefit that the YMCA provided to her because she requested it. (ECF No. 29, ¶ 7.) Haymer asked for additional hours so she would be employed fulltime. (ECF No. 29, ¶ 7.) The YMCA accommodated her request by assigning her to other programs that she could work on in the afternoon after her morning responsibilities with the Credible Messenger Program.

As for Haymer's allegation that Qawi told her she could not work with boys, the court accepts that Qawi made the statement. The court also accepts as true Haymer's allegation that her immediate supervisor, Dolley, told her there was not such limitation. Thus, a dispute exists as to whether she actually would have been limited to mentoring girls. But the dispute is not material because Haymer did not suffer any discrimination as a result. It is undisputed that she was never prevented from mentoring any boy because no children were yet in the program.

Thus, none of these actions, in and of themselves, constituted discrimination. Thus, insofar as Haymer is seeking relief with respect to these discrete acts, summary judgment in the YMCA's favor is appropriate. Having said that, these incidents may nonetheless be relevant in assessing Haymer's overall claim of discrimination of retaliation. The remaining aspects of Haymer's claim requires closer analysis.

### 3.1.1. Pay Disparity

It is undisputed that Haymer was paid less than her male colleagues.[2] The YMCA contends that this disparity was because two of her male colleagues were "lead messengers." (ECF No. 37, ¶ 86.) But Haymer says there is no such thing as a "lead messenger." (ECF No. 20 at 12.) No such position was included in the YMCA's bid for the Credible Messenger Program contract. (ECF Nos. 31, ¶ 3; 37, ¶ 92.) Nor has the YMCA provided a job description for a lead messenger or otherwise detailed what additional responsibilities these lead messengers would perform to merit the higher pay rate.

Passing that, there was a third male Credible Messenger, Justin Lambert, who the YMCA does not contend was a lead messenger. If he was paid more than Haymer, this would tend to support her allegation that she was paid less because she is a woman. If Lambert was paid the same (or less), it would undermine her allegations. But the YMCA

---

[2] Haymer does not allege a claim under the Equal Pay Act. *See* 29 U.S.C. § 206(d). Her claim is exclusively under Title VII.

has not introduced evidence as to his pay rate.[3] Haymer, however, testified that he stated in a meeting that he was paid more than $15 per hour. (ECF No. 31, ¶ 81.)

Viewing the evidence in the light most favorable to Haymer, three men were all paid more for performing the same job as Haymer. This evidence could reasonably support the conclusion that Haymer was paid less because she was a woman. Therefore, this aspect of the YMCA's motion must be denied. The court reaches this conclusion without considering the YMCA's assertion that Haymer should have been paid $15 per hour and was paid $14 only because of a clerical error. (ECF No. 29, ¶ 18.) Absent evidence of how much Lambert was paid, the court need not at this stage determine whether the amount Haymer was paid was due to a clerical mistake or due to discrimination.

### 3.1.2. Termination – Discrimination

The YMCA argues that it is entitled to summary judgment because it had legitimate, nondiscriminatory reasons for firing Haymer. (ECF No. 24 at 9.) However, the paragraph in its opening summary judgment brief where it purports to provide reasons for Haymer's termination is devoid of any citation to the record. And its proposed findings of fact do not specify why Qawi fired her.

---

[3] The YMCA states in a proposed finding of fact, "The Plaintiff was hired at the rate of $15.00, the same as two male credible messenger team members." (ECF No. 29. ¶ 18.) However, that statement is supported only by a citation to Haymer's complaint, where she alleged, "On or about March 18, 2019, Haymer learned that one male Credible Messenger was paid $17.00 per hour while the other two male Credible Messengers were being paid $15.00 per hour." (ECF No. 1, ¶ 15.) Allegations in a complaint are not adequate support for such a factual assertion.

In reply, the YMCA submitted a "Voluntary Separation / Involuntary Termination Form" and "Disciplinary Action Notice" that Qawi completed regarding Haymer's termination. (ECF No. 36-1.) However, matters raised for the first time in reply are generally not properly before the court. *See Nationwide Ins. Co. v. Cent. Laborers' Pension Fund*, 704 F.3d 522, 527 (7th Cir. 2013). *But see Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 318 (7th Cir. 2003) ("There is no blanket prohibition from filing additional affidavits when a movant for summary judgment files a reply brief following a nonmovant's response."). By failing to include the relevant factual assertions in its proposed findings of fact, Haymer was deprived of an opportunity to address the assertions. Thus, the court finds that it would be improper to consider these documents.

In any event, consideration of the documents would not result in the court granting the YMCA's motion. In a document attached to the Disciplinary Action Notice, Qawi recounts his conversation with Haymer where she stated that she believed she had three different positions and could not do them in a 40-hour week. (ECF No. 36-1 at 3.) Qawi states that he responded that "she only had two positions: 1) Family Engagement Specialist under the Credible Messenger Program and 2) Family Engagement Specialist under the Focus on Fathers Initiative." (ECF No. 36-1 at 3.) This led Haymer to state that she thought she was going to work with children in the Credible Messenger Program. Qawi "explained if we have any girls referred to the program that she would work with girls and not directly with the boys. As the men in the program will work with the boys

and not directly with any girls." (ECF No. 36-1 at 3.) Qawi explained that if she did not want to work those positions then she could resign. (ECF No. 36-1 at 3.)

Qawi further states that at a Credible Messenger meeting on March 18, 2019, Haymer said that Harrison had lied about her not wanting to work for the Focus on Fathers Program. (ECF No. 36-1 at 3.) When she proceeded to ask Qawi "questions regarding HR issues," Qawi said they would talk about it later. (ECF No. 36-1 at 3.) Qawi then left. (ECF No. 36-1 at 3.) The document closes: "My observation of Nakeyda over the past week has shown me she has a very negative attitude and is a negative influence on the Credible Messenger staff in the program, which is the reason I'm terminating her." (ECF No. 36-1 at 3.)

Given all the circumstances of Haymer's tenure at the YMCA, a reasonable finder of fact could conclude that Qawi's explanation that he decided to fire Haymer because she has a "very negative attitude" and "is a negative influence" was merely a pretext to fire her because she is a woman.

Viewing the evidence in the light most favorable to Haymer, a reasonable finder of fact could look to evidence indicating that Qawi put up obstacles to her being hired (*i.e.*, requiring her to undergo a panel interview with three other male candidates), paid her less than her male counterparts, and prevented her from going on a training trip, to conclude that Haymer's gender was a factor in Qawi's decision to fire her.

Moreover, although it is also undisputed that Haymer held the position of "Credible Messenger" (*see, e.g.*, ECF No. 31, ¶ 58), there is evidence that Qawi did not regard her as holding that position. Haymer alleges that Qawi insisted that she did not hold this position but was merely working within the program. (ECF No. 31, ¶ 71.) And Qawi's statement in the Disciplinary Action Notice that Haymer was a "Family Engagement Specialist under the Credible Messenger Program" reinforces this.

Finally, Qawi apparently regarded Haymer's "negative attitude" as constituting such serious misconduct that it was appropriate to terminate her without first attempting to address her allegedly negative attitude through the YMCA's progressive discipline policy. (ECF No. 31, ¶ 104.) Although Dolley testified that he once talked to Haymer about what he regarded as inappropriate behavior (ECF No. 22-3 at 21-22, 80:25-82:14), Qawi did not know of any prior discipline before he fired her (ECF No. 22-2 at 21, 81:11-16). A reasonable finder of fact could regard a person's alleged "negative attitude" as too trivial to warrant foregoing remedial efforts, thus bolstering Haymer's contention that Qawi's explanation was mere pretext.

Because a reasonable finder of fact could conclude that Haymer's gender was a motivating factor in Qawi's decision to fire her, the court must deny this aspect of the YMCA's motion for summary judgment.

### 3.1.3. Termination – Retaliation

The YMCA argues that Haymer's retaliation claim fails because there is no evidence that she engaged in protected activity. (ECF No. 24 at 8-9.) Haymer, however, testified that she told Qawi that she did not think it was legal for him to not allow her to work as a mentor to boys because she is a woman. (ECF Nos. 31, ¶ 77; 22-1 at 34, 133:6-10.) Such a statement would readily come within the "opposition" clause of Title VII's retaliation prohibition. *See* 42 U.S.C. § 2000e-3(a).

Haymer was fired just five days after this protected activity. "Suspicious timing is rarely enough to create a triable issue," *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 578 (7th Cir. 2021) (quoting *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009)), but Haymer has more. As discussed above, Qawi did not follow the YMCA's progressive discipline policy. Even the reason Qawi gave for her termination—that she has a "negative attitude" and is a "negative influence"—could be understood as a thinly-veiled reference to her having challenged her supervisor and expressed her view that Qawi was unlawfully discriminating against her based on gender by not letting her work with boys.

Because a reasonable finder of fact could conclude that the YMCA fired Haymer because she engaged in protected activity, the court must deny the YMCA's motion for summary judgment with respect to this aspect of Haymer's claim.

### 3.2. Haymer's Motion for Summary Judgment

Haymer does not seek summary judgment with respect to her termination. The only aspect of Haymer's motion that survives the YMCA's motion for summary judgment is her argument that she is entitled to summary judgment regarding her pay disparity claim.

As noted, it is undisputed that Haymer was paid less than at least some of her male colleagues. In Haymer's view, the only explanation for this disparity is because she is a woman. Therefore, she argues she is entitled to summary judgment.

Again, the YMCA contends that two of her colleagues were paid more because they were "lead messengers." A dispute exists as to whether this was a bona fide position. And as to Haymer's third male colleague, it is unclear if he was actually paid more than Haymer. But even if all her male colleagues were paid more than Haymer, that would not support summary judgment in Haymer's favor. There may be reasons other than Haymer's gender that may have led Qawi to choose to pay these men more. For example, as Haymer emphasizes, Qawi was personally acquainted with all of these men for years. (ECF No. 20 at 13.) He may well have simply wanted to pay more to his friends. That is nepotism, not discrimination. Because a reasonable finder of fact could conclude that Haymer's gender was not a factor in Qawi's decision to pay her less than her male colleagues, the court must deny Haymer's motion for partial summary judgment.

### 4. Conclusion

For the reasons set forth above,

**IT IS THEREFORE ORDERED** that Nakeyda Haymer's motion for partial summary judgment (ECF No. 19) is **denied**.

**IT IS FURTHER ORDERED** that Racine Family YMCA's motion for summary judgment (ECF No. 23) is **granted in part and denied in part**. It is granted with respect to Haymer's claims that she suffered sex discrimination in violation of Title VII because she was required to interview for the Credible Messenger position; she was not allowed to go on the trip to Maryland; she was required to work as a Family Engagement Specialist, in the Focus on the Fathers Program, and in the Credible Messenger Program; and she was told she was not allowed to mentor boys. The motion is denied in all other respects.

**IT IS FURTHER ORDERED** that the Clerk shall schedule a telephonic conference to discuss further proceedings.

Dated at Milwaukee, Wisconsin this 22nd day of June, 2022.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge